IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TSYDEA MCDAVID | § | |
| *Plaintiff*, | § | |
| | § | Civil Action No. 4:21-cv-00993 |
| vs. | § | |
| | § | |
| HOUSTON INDEPENDENT SCHOOL | § | |
| DISTRICT | § | |
| *Defendant.* | § | |

## DEFENDANT'S MOTION TO DISMISS AND RESPONSE IN OPPOSITION TO PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF

Defendant Houston Independent School District ("HISD" or the "District") opposes Plaintiff Tsydea McDavid's application for injunctive relief, and moves to dismiss this lawsuit pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), as follows:

### INTRODUCTION

This case is essentially a grading dispute. Plaintiff seeks extraordinary relief in the form of a Court order directing HISD to remove certain classes from her transcript (including two classes that she failed), and to change other failing grades to arbitrary passing ones. But Plaintiff has not even stated a valid claim against the District—much less established her entitlement to a mandatory injunction—and her requested relief violates well-established Texas law. *See* TEX. EDUC. CODE § 28.0214(a)–(b). As demonstrated below, the Court lacks subject-matter jurisdiction over Plaintiff's grading dispute with the District, her request for injunctive relief should be denied, and her lawsuit should be dismissed.

### QUESTIONS PRESENTED

1. The Texas Education Code provides that "a course grade issued by a classroom teacher is final and may not be changed unless the grade is arbitrary, erroneous, or not consistent with the school district grading policy applicable to the grade, ***as determined by the board of trustees*** . . . ." and that such "[a] determination by a school district board of trustees . . . ***is not subject to appeal.***" TEX. EDUC. CODE § 28.0214(a)–(b) (emphasis added). HISD's Board of Trustees has already considered—and rejected—Plaintiff's claim that her failing grades should be

changed to passing ones, and the Board's determination cannot be appealed.  Should the Court dismiss Plaintiff's grade-related claims for lack of subject-matter jurisdiction?

2.      Following *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), formulaic recitations of a claim's bare elements no longer suffice.  To satisfy Rule 8, complaints must allege facts specific enough to raise the claimed right to relief above the speculative level.  Despite these now well-established pleading rules, Plaintiff vaguely alleges that the District has violated Section 504 of the Rehabilitation Act, but she fails to plead any *facts* suggesting that the District intentionally discriminated against her based on his disabilities.  Should the Court dismiss Plaintiff's disability discrimination claims pursuant to Rule 12(b)(6)?

3.      As a public school district, the District retains governmental immunity from all common law tort claims except to the extent such immunity is waived by the Texas Legislature.  Plaintiff alleges that she is entitled to injunctive relief because the District failed to provide her with a progress report, but she has not identified any valid waiver of immunity that would allow her to bring such a claim.  Should the Court dismiss Plaintiff's claims pursuant to Rule 12(b)(1)?

4.      Has Plaintiff demonstrated that she is entitled to mandatory injunctive relief?

LEGAL STANDARDS

## I.      Applications for Injunctive Relief

A preliminary injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion."  *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989).  To be entitled to a preliminary injunction, a movant must satisfy the heavy burden of demonstrating that (i) there is a substantial likelihood of success on the merits; (ii) a substantial threat of irreparable injury will result if the injunction is not granted; (iii) the threatened injury outweighs the threatened harm to the nonmovant; and (iv) granting the injunction will not disserve the public interest.  *Paulsson Geophysical Svcs., Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008).  The decision to grant a preliminary injunction is to be treated as the exception rather than the rule.  *State of Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975).

In this case, an even heavier burden applies because Plaintiff seeks a mandatory injunction.  *See White*, 862 F.2d at 2011; *Justin Indus., Inc. v. Choctaw Sec., L.P.*, 747 F. Supp. 1218, 1220 (N.D. Tex. 1990), *aff'd and remanded*, 920 F.2d 262 (5th Cir. 1990).  Mandatory injunctions are "particularly disfavored" because they compel the nonmovant to perform an act, rather than simply maintain the

2

status quo. *Justin Indus., Inc.*, 747 F. Supp. at 1220 n.5; *Rush v. Nat'l Bd. of Medical Examiners*, 268 F. Supp. 2d 673, 678 (N.D. Tex. 2003). Because Plaintiff is asking HISD to affirmatively change her grades and her transcript, she is requesting that the Court alter the status quo, and is therefore requesting a mandatory injunction. To obtain a mandatory injunction, Plaintiff carries "the burden of showing *clear entitlement* to the relief under the facts and the law." *Id.* (emphasis in original); *see also Exhibitors Poster Exchange, Inc. v. Nat'l Screen Serv.*, 441 F.2d 560, 561 (5th Cir. 1971) (a mandatory injunction "should not be granted except in rare instances in which the facts and law are clearly in favor of the moving party."). As set forth below, Plaintiff cannot demonstrate her entitlement to any injunctive relief, much less a mandatory injunction under this heightened standard.

## II.     Rule 12(b)(1): Lack of Subject Matter Jurisdiction

A court must dismiss a lawsuit pursuant to Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1009 (5th Cir.), *cert denied*, 534 U.S. 993 (2001). Courts should therefore consider a Rule 12(b)(1) jurisdictional argument before addressing any argument on the merits. *Ramming v. U.S.*, 291 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). The plaintiff has the burden of establishing that jurisdiction is proper. *Stockman v. Federal Elect. Comm'n*, 168 F.3d 144, 151 (5th Cir. 1998).

## III.    Rule 12(b)(6): Failure to State a Claim

A court should dismiss a lawsuit on the pleadings pursuant to Rule 12(b)(6) where there is either (i) a lack of a cognizable theory of recovery, or (ii) the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Phrased differently, a claim should be dismissed "if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994). While a court will accept the plaintiff's factual allegations as true, the factual

allegations must exist; "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court clarified Rule 8's specificity standards for pleadings, holding that all pleadings must "provide the 'grounds' of [the party's] 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not to." 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). This standard "governs . . . in all civil actions and proceedings in the United States district courts." *Iqbal*, 556 U.S. at 684.

When deciding whether a pleading satisfies the *Twombly/Iqbal* standard, a court must first determine if the asserted claims go beyond mere labels and conclusions and a formulaic recitation of elements, if any. "[N]aked assertion[s] devoid of further factual enhancement" will no longer suffice. *Iqbal*, 556 U.S. at 678 (internal citations and quotations omitted). To properly plead a claim, the plaintiff must give a defendant not only fair notice of the claim being asserted, but "the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal citations and quotations omitted) (per curiam). "[T]he tenet that a court must accept as true all of the allegations contained in [a pleading] is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Mere assertions of legal conclusions "are not entitled to assumption of truth"—they "must be supported by factual allegations." *Id.* at 678–79. Only where a plaintiff provides well-pleaded factual allegations may a court assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint fails to state a claim and should be dismissed. *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)).

4

## BACKGROUND FACTS

Plaintiff Tsydea McDavid is a current student of Houston Independent School District.  She transferred to HISD's Michael E. DeBakey High School for Health Professionals ("DeBakey") from a private school in or around June 2017, before her freshman year of high school.  *See* Pl.'s Orig. Pet., ¶ 7.[1]  At that time, the private school Plaintiff had attended (Westbury Christian) would not release a copy of her official transcript or final report card.  *Id.* at ¶ 9.  Consequently, although Plaintiff represented that she had already taken certain core classes required by DeBakey—Algebra I, Integrated Physics & Chemistry (IPC), and Spanish I—she could not demonstrate that she had successfully completed them.  Without proof that she had already received high school credit for these courses, Plaintiff was enrolled in Algebra I and IPC at DeBakey for the 2017–2018 school year.  *See id.* at ¶ 10.[2]

The Magnet Program Entrance Agreement that Plaintiff signed before attending DeBakey provided that all students are expected to maintain an individual class average of 75 or higher on all "core classes" and an average of 80 or higher in all magnet classes.  *See* Exhibit 1.  The Agreement explained that students who fail to meet these expectations "are placed on an HISD Magnet Growth

---

[1] The Petition references Plaintiff's acceptance into HISD's magnet program at DeBakey, as well as a grievance that she filed in connection with her grades, but certain relevant documents are not attached to the Petition.  The District has attached those relevant documents to this Motion.  Although a court's Rule 12(b)(6) analysis is generally limited to a review of the complaint and its attachments, a court may also consider documents expressly referenced in the complaint.  *See Walch v. Adjutant General's Dept' of Tex.*, 533 F.3d 289, 293–94 (5th Cir. 2008).  Accordingly, the District's inclusion of documents relating to Plaintiff's acceptance into HISD's magnet program, and documents relating to her internal grievance, does not convert this motion into a motion for summary judgment.  The same is true with respect to the District's inclusion of information relating to a lawsuit filed by Plaintiff's mother (*see* footnote 2).  *See Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. 2011) ("[T]he district court's application of judicial notice [to public records] did not transform the motion to dismiss into a motion for summary judgment.").

[2] Plaintiff's current lawsuit alleges that "[o]n June 5, 2017, DeBakey reached out to Annette Turner, a representative from Westbury Christian School, who confirmed [Plaintiff's] successful completion of [Algebra I, Spanish I, and IPC]."  *See* Pl.'s Orig. Pet., ¶¶ 8–9.  In addition to being unsubstantiated hearsay, this contradicts certain allegations that Plaintiff's mother made in a lawsuit filed against Westbury Christian on June 25, 2018.  Cause No. 2018-42187, *Tyishka McDavid v. Westbury Christian*, In the 127th Judicial District Court of Harris County, Texas.  In that case, Ms. McDavid specifically alleged that Westbury Christian "refus[ed] to release [Plaintiff's] grades or denote to DeBakey [] that [Plaintiff] had already taken Algebra I, Spanish I and [] IPC during her 8th grade year."  *See* Exhibit 2, p. 8.  The District requests that the Court take judicial notice of Ms. McDavid's lawsuit against Westbury Christian.

Plan for a minimum of one grading cycle." *Id.* Per the Agreement, the growth plan is reviewed by a committee that evaluates a student's progress on the growth plan, is reviewed each grading cycle that the plan remains in place, and is used to determine whether a student should remain in the magnet program the following school year. *Id.* Furthermore, the "Student Expectations" portion of the Agreement details the required curricula at DeBakey (including five credits of Mathematics), and states the following:

> Failure to meet the stated expectations will result in placement of the student on probation . . . and issuance of a growth plan for a probationary period. The student's parent/guardian will be notified by mail and a conference will be requested. If the student has not made reasonable progress, he/she must return to his/her zoned school at the end of the school year.

*Id.*

Plaintiff failed the second semesters of Algebra I and IPC at DeBakey. *See* Pl.'s Orig. Pet. at Exh. D. She subsequently failed other classes during the 2018–2019 school year, including Algebra II and Geometry. *Id.* Ultimately, Plaintiff was placed on a growth plan, and, after she did not meet the goals set forth in the growth plan, her magnet transfer (that had allowed her to attend DeBakey) was not renewed.[3]

On January 15, 2019, Plaintiff filed a Level One Grievance pursuant to District Board Policy FNG (Local), claiming that her failing grades should be changed to passing grades for various different reasons.[4] *See* Exhibit 3; *see also* Pl.'s Orig. Pet. at ¶ 16. The Level One hearing officer denied Plaintiff's requested relief on February 15, 2019, noting that HISD's grading guidelines prohibited her grades from being changed. *See* Exhibit 5 ("The only reasons for changing a student's grade after it has been recorded are: if there was an error in the computation of the student's grade; or if an error was made

---

[3]During the 2018–2019 school year, 324 students were placed on growth plans because of unsatisfactory grades at DeBakey. Of these students, 59 students had their magnet transfers revoked because of unsatisfactory grades.

[4]District Board Policy FNG (Local) provides a three-level grievance process, culminating with a hearing before the District's Board of Trustees. *See* Exhibit 4, pp. 4–7.

entering grades into the teacher's grade book.  All such changes must be initiated by the teacher assigning the grade . . . ."); *see also* Exhibit 6, p. 1 ("Finality of Grade").  Plaintiff appealed that determination to Level Two, and the Level Two hearing officer denied Plaintiff's requested relief on June 6, 2019.  *See* Exhibit 7.  Plaintiff then appealed to the District's Board of Trustees ("Level Three"), which convened a hearing on January 23, 2020, and voted to uphold the Level Two decision.  *See* Exhibit 8.

Plaintiff filed this lawsuit in Harris County, Texas on March 3, 2021.  Her petition seeks the following injunctive relief:

- Immediate removal of "duplicate courses" on Plaintiff's transcripts (Algebra I, Spanish I, and IPC);

- Change of Plaintiff's Algebra II Semester 1 grade of 56 to a grade of 75;

- Change of Plaintiff's Algebra II Semester 2 grade of 66 to a grade of 75;

- Change of Plaintiff's Geometry A Semester 1 grade of 66 to a grade of 75;

- Change of Plaintiff's Geometry B Semester 2 grade of 39 to a grade of 75; and

- Release of Plaintiff's DeBakey-specific transcripts.

*See* Pl.'s Orig. Pet., ¶ 18.  The rationale for Plaintiff's request that her failing grades be arbitrarily changed to 75s (as opposed to some other passing grade) is unclear.

The District timely removed the case to federal court on March 26, 2021, based on Plaintiff's allegations that HISD violated Section 504 of the Rehabilitation Act.[5]  *See* Dkt. No. 1.

## ARGUMENT AND AUTHORITIES

Plaintiff wants the Court to order HISD to remove certain "duplicate" classes from her high school transcript, even though she actually took the classes.  She also wants the Court to order HISD

---

[5]In or around May of 2018, the District evaluated Plaintiff and determined that, because she had been diagnosed with an anxiety disorder, she was eligible to receive certain accommodations under Section 504 of the Rehabilitation Act. *See* Pl.'s Orig. Pet., pp. 14–15.

to arbitrarily change other failing grades to passing grades because the District supposedly "fail[ed] to provide a progress report" and "fail[ed] to follow Section 504 accommodations." The District opposes Plaintiff's requests for injunctive relief, and moves to dismiss her lawsuit, because (i) the Court lacks jurisdiction over Plaintiff's grading dispute with the District, (ii) Plaintiff's requested relief violates Texas law, and (iii) Plaintiff has otherwise failed to state a valid claim against the District under state or federal law.

## I.   The Court lacks subject matter jurisdiction over Plaintiff's grading dispute.

Section 28.0214(a) of the Texas Education Code mandates that "a course grade issued by a classroom teacher is final and may not be changed unless the grade is arbitrary, erroneous, or not consistent with the school district grading policy applicable to the grade, as determined by the board of trustees . . . ." The District's Board Policies and grading guidelines mirror this statutory requirement. *See* Exhibit 6, p.1 ("An examination or course grade issued by a classroom teacher is final and may not be changed unless the grade is arbitrary, erroneous, or not consistent with the district grading policy applicable to the grade, as determined by the board."); Exhibit 2, p. 3 ("The only reasons for changing a student's grade after it has been recorded are: if there was an error in the computation of the student's grade; or if an error was made entering grades into the teacher's grade book. All such changes must be initiated by the teacher assigning the grade . . . .").

"A determination by a school district board of trustees [under § 28.0214(a)] is not subject to appeal." TEX. EDUC. CODE § 28.0214(b). In other words, once a school district's board of trustees determines that a student's grade is proper (*i.e.*, that it is *not* arbitrary, erroneous, or inconsistent with the district's grading policies), that determination is final and cannot be challenged in the courts. *See, e.g., Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) (noting that Section 28.0214(b) "declar[es] a school district board of trustees' determination as to grades [is] not 'subject to appeal'"). Texas courts have construed the statutory prohibition on appeals to "mean just what it

8

says," and have held that "district and appellate courts have no jurisdiction to review" the decision at issue. *See, e.g., Nw. Indep. Sch. Dist. v. K.R.*, 2020 WL 4907331, *4 (Tex. App.—Fort Worth Aug. 20, 2020, no pet.); *see also Hankins v. P.H.*, 1 S.W.3d 352, 354 (Tex. App.—Corpus Christi 1999, pet. denied). Although the courts in *K.R.* and *P.H.* considered this issue in the context of a different provision of the Texas Education Code, the statutory language is substantially similar, and the result should be the same. *Compare* TEX. EDUC. CODE § 28.0214(b) ("A determination by a school district board of trustees [under § 28.2014(a)] is not subject to appeal.") *with id.* at § 37.009(a)–(b) ("If school district policy allows a student to appeal to the board of trustees . . . the decision of the board [] is final and may not be appealed . . ." and "Any decision of the board [regarding DAEP placement] is final and may not be appealed.").

Here, HISD's Board of Trustees has already considered—and rejected—Plaintiff's request that her failing grades be transformed to passing grades (that she did not earn). *See* Exhibit 8. The Board's decision "is not subject to appeal," and cannot be reviewed by this Court. TEX. EDUC. CODE § 28.0214(b). The Court therefore lacks subject-matter jurisdiction over Plaintiff's grading dispute. Further, the Texas Legislature has clearly identified who is responsible for determining student grades (*i.e.,* classroom teachers, subject to limited review by the board of trustees), and Plaintiff's suggestion that courts should usurp the role of classroom teachers—or second-guess school boards—is contrary to Texas law and should be rejected.

Plaintiff's grade-related claims against the District should be dismissed with prejudice pursuant to Rule 12(b)(1).

## II.    Plaintiff has failed to state a viable claim of disability discrimination against the District.

Plaintiff's lawsuit alleges that she is entitled to injunctive relief "for failure to follow the 504 accommodation[s]." *See* Pl.'s Orig. Pet. ¶ 18(c)–(e). As set forth below, Plaintiff has failed to state a

valid claim for disability discrimination, and her claims against the District should be dismissed pursuant to Rule 12(b)(6).

### A.      Legal standards governing Plaintiff's disability-related claims.

Although the petition references Section 504 of the Rehabilitation Act, it is unclear what cause(s) of action Plaintiff is attempting to bring relating to her alleged disabilities and resulting accommodations. Accordingly, the District will address both Section 504 and Title II of the Americans with Disabilities Act.

Section 504 and the ADA both prohibit discrimination against qualified individuals with disabilities, albeit the statutes govern different entities: the ADA applies to public entities, whereas the Rehabilitation Act prohibits discrimination in federally-funded programs and activities. *See* 42 U.S.C. § 12131(1) (ADA); 29 U.S.C. § 794(a) (Rehabilitation Act). But, both statutes are judged under the same legal standards, and the same remedies are available under both Acts. *Shurb v. Univ. of Tex. Health Sci. Ctr. at Houston-Sch. of Medicine*, 63 F. Supp. 3d 700, 706 (S.D. Tex. 2014) (quoting *Kemp v. Holder*, 610 F.3d 231, 234–35 (5th Cir. 2010)); *see also I.A. v. Seguin Indep. Sch. Dist.*, 881 F. Supp. 2d 770, 776 (W.D. Tex. 2012) ("Courts use similar liability standards in interpreting claims under the ADA and [Section] 504.").

To state a *prima facie* case of disability discrimination, a plaintiff must demonstrate that: (i) she is a qualified individual with a disability; (ii) she is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (iii) such exclusion, denial of benefits, or discrimination is because of her disability. *Frame v. City of Arlington*, 575 F.3d 432, 435 (5th Cir. 2009); *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004).

Additionally, in the education context, "a cause of action is stated under [Section] 504 when it is alleged that a school district **refused** to provide reasonable accommodations for the handicapped

person to receive the full benefits of the school program." *Estate of A.R. v. Muzyka*, 543 Fed. App'x 363, 365 (5th Cir. 2013) (internal quotations omitted) (emphasis added).[6]  The Fifth Circuit "used the term refusal because [Section 504] requires intentional discrimination against a student on the basis of his disability." *D.A.* ex rel. *Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 454 (5th Cir. 2010). "Facts creating an inference of professional bad faith or gross misjudgment are necessary to substantiate a cause of action for intentional discrimination under § 504 against a school district." *Id.* at 455.  Importantly, Section 504 "does not create general tort liability of educational malpractice." *Id.* at 454.

### B. *Plaintiff has not stated a viable disability discrimination claim against the District.*

Although Plaintiff alleges that the District "did not follow" her Section 504 accommodations, and that her teachers and counselors were not "helpful" or "respectful" or her anxiety, she does not allege any facts suggesting that the District intentionally discriminated against her based on her disabilities.  Notably absent from Plaintiff's petition is any allegation that the District deprived her of any educational services or benefits, excluded her from any programs or activities, or did anything else to discriminate against her, much less that it did any of these things *because of her disabilities*.  Similarly, Plaintiffs pleads no facts creating an inference of professional bad faith or gross misjudgment, which are necessary to state a claim for intentional disability discrimination against a school district.

Additionally, Plaintiff has not identified a single accommodation (reasonable or otherwise) that she requested in connection with her disabilities, but that the District refused to provide. Plaintiff's affidavit alleges that she struggled with DeBakey's curriculum during her freshman year, in

---

[6]To succeed on a failure-to-accommodate claim, generally, a plaintiff must prove that: (i) she is a qualified individual with a disability; (ii) the disability and its consequential limitations were known by the covered entity; and (iii) the entity failed to make reasonable accommodations.  *Nelly v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013).  "The plaintiff [] bears the burden of requesting reasonable accommodations."  *Shurb*, 63 F. Supp. 3d at 708–09 (citing *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007)).

part, because she "did not have any accommodations at the time;" however, neither her affidavit nor her petition suggest that the District was aware of any disabilities at that time, that Plaintiff had requested any accommodations at that time, or that the District refused to provide any requested accommodations at that time.

To the extent the Plaintiff intends to argue that she is entitled to have her grades or her transcripts changed as an "accommodation," that claim fails as a matter of law.  Not only does Plaintiff's requested relief violate Texas law (as discussed above), the duty to provide reasonable accommodations does not require an educational institution "to lower or to effect substantial modifications of standards to accommodate a handicapped person." *Southeastern Comm. College v. Davis*, 442 U.S. 397, 413 (1979); *ass also School Bd. of Nassau Cnty. v. Arline*, 480 U.S. 273, 287 n.17 (1987) (accommodations are not reasonable if they impose "undue financial and administrative burdens" or if they require a "fundamental alternation in the nature of [the] program").  Further, although a qualified individual with a disability has a right to a *reasonable* accommodation, she is not entitled to be given her *preferred* accommodation.  *Shurb*, 63 F. Supp. 3d at 709; *see also, e.g.,* 29 C.F.R. pt. 1630, App., § 1630.9 ("The accommodation [] does not have to be the "best" accommodation possible, so long as it is sufficient to meet the job-related needs of the individual being accommodated . . . [T]he employer providing the accommodation has the ultimate discretion to choose between effective accommodations . . . ."); *Choi v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 633 Fed. App'x 214, 215 (5th Cir. 2015) (adapting failure-to-accommodate standard from Title I to Title II).  There is also no duty to provide accommodations "beyond those necessary to eliminate discrimination against otherwise qualified individuals," meaning that "only those accommodations that are necessary to ameliorate a disability's effect of preventing meaningful access to the benefits of, or participation in, the program at issue" are required.  *Redding v. Nova Southeastern Univ., Inc.*, 165 F. Supp. 3d 1274, 1299 (S.D. Fla. 2016) (internal citations and quotations omitted).  And, "[a]bsent evidence of discriminatory

intent or disparate impact, **reasonable deference must be accorded to educational institution's academic decisions**." *Shurb*, 63 F. Supp. 3d at 710 (citing *McGregor v. La. State Univ. Bd. of Supervisors*, 3 F.3d 850, 859 (5th Cir. 1993)) (emphasis added).

Plaintiff's allegations of disability discrimination do not raise her claimed right to relief above the speculative level.  Because Plaintiff "ha[s] not nudged [her] claims across the line from conceivable to plausible," her claims should be dismissed.  *Twombly*, 550 U.S. at 570.

## III.   Plaintiff has otherwise failed to state a valid claim against the District.

The petition also alleges that the District "fail[ed] to provide a progress report."  *See* Pl.'s Orig. Pet., ¶ 18(b).  To the extent that Plaintiff is intending to assert some sort of tort theory of liability based on this alleged failure, that claim is barred by the District's governmental immunity.

The Texas Tort Claims Act provides the exclusive means by which a plaintiff may, in certain limited circumstances, bring tort claims against a governmental unit in Texas.  *See* TEX. CIV. PRAC. & REM. CODE § 101.021; *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008). As a public school district, the District retains governmental immunity from all common law tort claims except to the extent such immunity is waived by the Act.  TEX. CIV. PRAC. & REM. CODE § 101.025; *LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992).  The waiver of immunity provided by the Act is very narrow, and is limited only to claims arising from the use or operation of a motor vehicle.  TEX. CIV. PRAC. & REM. CODE § 101.051.  Governmental immunity deprives a court of subject-matter jurisdiction, and requires dismissal of claims with prejudice.  *Reata Const. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006); *Austin v. Hood County*, 2007 WL 631278, *2 & n.2 (N.D. Tex. March 1, 2007).  The plaintiff bears the burden of alleging facts that affirmatively establish subject-matter jurisdiction.  *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

Because the District's alleged failure to provide Plaintiff with a progress report has nothing to do with the negligent operation of a motor vehicle—and because Plaintiff has not otherwise identified a valid waiver of the District's governmental immunity in this context—Plaintiff's claims against the District fail as a matter of law and should be dismissed with prejudice pursuant to Rule 12(b)(1).

## IV.    Plaintiff has not established her entitlement to mandatory injunctive relief.

As noted above, Plaintiff must demonstrate a *clear entitlement* to injunctive relief.  She has not done so.  First, for all of the reasons discussed above, she cannot clearly establish that she is substantially likely to succeed on the merits of any of her claims.  Second, Plaintiff has not clearly established a substantial threat of irreparable harm.  All she says on this issue is that "[i]f the Court does not grant this request to restrain Defendant, the Plaintiff will continue to suffer imminent and irreparable harm in that [Plaintiff]'s collegiate prospects will continue to be significantly diminished" and that "[p]robable injury requires a showing that the harm is imminent, the injury would be irreparable, and the applicant has no other adequate legal remedy . . . Plaintiff has satisfied these requirements."  *See* Pl.'s Orig. Pet., ¶¶ 22–23.  Plaintiff's allegations regarding her future collegiate prospects are speculative, her conclusory allegations are not entitled to the assumption of truth, and she has not otherwise demonstrated a substantial threat of irreparable harm.  Third, Plaintiff has not clearly established that any threatened injury outweighs the harm to the District, especially in light of the fact that Plaintiff's requested relief violates Texas law.  Finally, Plaintiff has not clearly established that granting the injunction will not disserve the public interest.  After all, Section 28.0214(b) makes clear that the Texas Legislature did not intend for grading dispute to be brought to court.  Allowing students to sue their school districts every time they disagree with their grades will drain school districts' resources and will detrimentally impact the public school system.  Plaintiff's request for injunctive relief should be denied.

14

**CONCLUSION**

For the foregoing reasons, Defendant Houston Independent School District requests that the Court deny Plaintiff's request for injunctive relief, and also dismiss this case pursuant to Rule 12(b)(1) and/or Rule 12(b)(6).  The District requests that the Court award it all such other and further relief to which it has shown itself entitled, at law or in equity.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By:   /s/ Stephanie A. Hamm
James E. Byrom
State Bar No. 03568100
Southern District No. 6874
jbyrom@thompsonhorton.com
Stephanie A. Hamm
State Bar No. 24069841
Southern District No. 108779
shamm@thompsonhorton.com

3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6767
Facsimile: (713) 583-8884

ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

On April 5, 2021, I electronically filed the foregoing document with the Clerk of the Court of the United States District Court for the Southern District of Texas, using the electronic case filing system of the Court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically using the CM/ECF filing system or by any other manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Stephanie A. Hamm
Stephanie A. Hamm

4816-6991-5872, v. 1

15